## NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2365-24

NR DEED, LLC,

     Plaintiff-Respondent,

v.

GEORGE FLETCHER COMPANY,
721 E. MAIN STREET, LLC,
DENISE JASINSKI and ADAM
JASINSKI,

     Defendants-Appellants.

_____

Submitted March 4, 2026 – Decided July 27, 2026

Before Judges Gummer and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Burlington County, Docket No. F-005169-22.

Calzaretto & Bernstein LLC, attorneys for appellants (John A. Calzaretto, on the brief).

Hangley Aronchick Segal Pudlin & Schiller, attorneys for respondent (Jason A. Levine, on the brief).

PER CURIAM

In this tax-foreclosure case, defendants George Fletcher Company (GFC), 721 E. Main Street, LLC (the LLC), Denise Jasinski, and Adam Jasinski[1] appeal an order voiding redemption of a tax-sale certificate, granting plaintiff NR Deed, LLC (NR Deed) a constructive trust on the real property at issue, and requiring the transfer of the property's title to plaintiff upon refund of the redemption funds. The trial court issued that order after conducting an evidentiary hearing and concluding defendants had "wrongfully received" the property by violating N.J.S.A. 54:5-89.1 of the Tax Sale Law (TSL), N.J.S.A. 54:5-1 to -137. Discerning no abuse of discretion or legal error in the court's decision, which was supported by substantial credible evidence, we affirm.

I.

George Fletcher was the sole shareholder and director of GFC, which, owned commercial property located in Maple Shade (the property). The 2018 municipal real estate taxes assessed on the property were not paid. On December 11, 2019, Christiana Trust as Custodian GSRAN-Z, LLC (Christiana) purchased a tax sale certificate(the certificate) on the property. The certificate reflected a sale amount of $8,940.64, consisting of $7,045.78 in unpaid

---

[1] We refer to Adam Jasinski and Denise Jasinski individually by their first names because of their shared last name. We refer to them collectively as the "Jasinskis."

municipal taxes, $1,794.86 in interest, and $100 cost of sale, together with a premium payment of $18,200.  The certificate stated the "sale [wa]s subject to redemption on repayment of the amount of sale . . . and the costs incurred by the purchaser as defined by statute" as well as "municipal charges accruing after December 31, 2018."  Christiana recorded the certificate with the Burlington County Clerk on February 11, 2020.

On April 11, 2022, the Jasinskis entered into a contract to purchase the property from GFC for $50,000.  Paragraph 40 of the contract stated the "[c]ontract contains the entire agreement of the parties.  No representations have been made by any of the parties, the Broker(s) or its salespersons, except as set forth in this [c]ontract."  The contract did not reference any repairs or construction work to be performed by the Jasinskis on the property.  Paragraphs 2 and 3 required the Jasinskis to pay a $5,000 initial deposit on or before April 14, 2022.  Paragraph 43 of the contract provided:

> This is a cash sale.  No inspections or mortgage.  The Maple Shade tax lien certificates will be paid with buyer's money from the agreed purchase price.  The title company has ordered the lien discharge documents from Maple Shade Township and pay [sic] Maple Shade day of settlement.  Balance of the $50,000 will be paid to the seller.

A-2365-24

Paragraph 43 included the following handwritten text: "Closing scheduled for May 20, 2022[,] will be scheduled as soon as issues are satisfied." The Jasinskis did not remit the $5,000 deposit to the title company or record the contract, and the closing did not occur.

After waiting the two years required by N.J.S.A. 54:5-86(a), Christiana commenced this litigation on May 25, 2022, seeking to foreclose GFC's right of redemption. Christiana recorded a notice of lis pendens regarding the property on July 19, 2022.

After entering default against GFC, the court on plaintiff's motion entered a September 16, 2022 order: requiring that redemption occur at the Maple Shade Township tax collector's office on November 15, 2022; setting the redemption amount at $46,090.96, representing "the amount due on [the] tax sale certificate and subsequent taxes and interest," together with $1,550.00 in taxed costs; and stating additional interest, taxes, and penalties would accrue until the date of redemption. The order also provided that if the redemption payment was not made timely, GFC would be "debarred and foreclosed of and from all right and equity of redemption." On September 21, 2022, Christiana assigned its interest in the tax sale certificate to plaintiff.

A-2365-24

On the same day, the Jasinskis' title agent, Brandy Aversa of the Infinity Title Agency, emailed Deborah Feldstein, Esq., who was Christiana's foreclosure counsel, advising that her title agency had been asked to close and insure a transaction regarding the property and asking if her client would "accept the payoff amount as provided and release the pending foreclosure." Christiana's corporate representative, Michael Burns, Esq., responded, stating Christiana would not accept the redemption given the pending foreclosure and would oppose any motion by the Jasinskis to intervene but would consider amicably resolving the matter with GFC. Aversa forwarded Burns's response to Denise; the Jasinskis did not move to intervene in the foreclosure case.

On September 23, 2022, Fletcher signed on behalf of GFC a "UNANIMOUS CONSENT AND AUTHORIZATION OF SHAREHOLDERS AND DIRECTORS OF [GFC]," authorizing Dawn Husted, who was his "trusted assist[ant]," to deliver the funds necessary to pay off and redeem the tax sale certificate on the property, "to execute in the name of [GFC] any and all commitments," and "to take . . . any other actions . . . [she] determine[d] to be necessary or appropriate." The form indicated Fletcher was "currently disabled."

A-2365-24

On the same day, Fletcher, on behalf of GFC, and the Jasinskis executed a letter agreement confirming Fletcher had "received the money . . . from [the Jasinskis] to pay the tax lien on the . . . property [and] to stop the foreclosure of the tax sale certificate that has come due." According to that agreement, "[t]he amount as per the tax pay off letter [wa]s approximately $51,000," and the payment consisted of "$22,000 cash and a certified bank check in the amount of $30,000." The agreement stated "[t]hey have also paid the back due taxes for the corporation for the years of 2016-2017; 2018-2019[; and] 2020-2021 in the amount of $3[,]082.24 and will pay the interest due." The letter further provided: "All parties acknowledge that when the tax sale certificate is paid today [the Jasinskis] will assume the ownership of the building. . . . by either the transfer of ownership of the corporation to the Jasinskis[] or by transfer of deed by the corporation to the Jasinskis no longer than [fourteen] days of this letter." Husted signed the agreement as a witness.

On September 26, 2022, Fletcher arrived at the Township tax collector's office in a medical transport van, submitted $50,000 in cash, and redeemed the tax sale certificate. Adam was present at that transaction. The redemption funds were subsequently provided to Feldstein's firm, which held them in escrow pending resolution of the case.

On September 29, 2022, Burns emailed Aversa, acknowledging Fletcher had delivered the redemption funds in cash to the Township tax collector. Burns characterized the redemption as "highly suspicious" and the pending contract of sale as "appear[ing] to be below fair market value and nett[ing] the property owner nothing." He further stated plaintiff required "proof of the source of the [redemption] funds," confirmation the closing had occurred, and copies of the closing documents. Aversa responded: "There was no settlement. I have not heard anything. I was not aware of this."

In a June 20, 2023 letter, defendants' counsel, John Calzaretto, Esq., advised Burns Fletcher had died on February 4, 2023, his daughter had been appointed the executor of his estate, and "the Seller and the Buyer" had agreed on February 17, 2023, to extend the closing date to June 30, 2023. Calzaretto represented "loan advances" had been made "to [GFC] representing costs advanced from the time that . . . Fletcher requested repairs be made by [Adam] in consideration for [GFC] and [the Jasinskis] agreeing to a [p]urchase [p]rice of $50,000," "Fletcher received a loan from the [Jasinskis] for the purposes of redeeming the tax lien and redeemed the tax lien with loan proceeds," the Jasinskis "ha[d] agreed to remit maintenance, real estate tax and utilities through the closing date," and "to date, the [Jasinskis] ha[d] expended $96,088.29." He

asserted the transaction involved "reasonable and adequate . . . and certainly more than nominal consideration."

On October 27, 2023, the trial court dismissed the foreclosure case without prejudice for lack of prosecution pursuant to Rule 4:64-8.  Christiana moved to vacate the dismissal, reinstate the foreclosure case, impose a constructive trust "that allows [p]laintiff to assume the Jasinski[s'] right to acquire the [p]roperty for the sum the[y had] paid to [d]efendant," and for a finding the Jasinskis had "violated the [TSL] by directly or indirectly redeeming [the] tax sale certificate . . . held by [p]laintiff . . . without intervening in this proceeding and without establishing they paid fair market value for the [p]roperty . . . as required by N.J.S.A. 54:5-89.1 and 54:5-98."  The court granted a separate motion to substitute NR Deed as the named plaintiff in a December 21, 2023 order.

In a supporting certification, Burns stated that, for several months after learning of the cash redemption, he repeatedly had contacted Aversa and Calzaretto but had not received "a substantive response" until Calzaretto's June 20, 2023 letter.  Burns further stated he had requested to inspect the property to assess its value but had not been permitted to do so.  Burns indicated he had learned the Jasinskis planned to purchase the property through the LLC, an

A-2365-24

entity they had formed in December 2022. He asserted that based on publicly-available information, the property "[wa]s worth substantially more than $50,000."

GFC, the Jasinskis, and the LLC opposed the motion and attempted to cross-move for an order permitting the Jasinskis and the LLC to intervene. The court did not consider the cross-motion because it was defective and defendants had not corrected the deficiencies. While the motion was pending, Husted as GFC's representative and Denise, on behalf of the LLC, executed a December 7, 2023 Stock Purchase Agreement, in which the LLC purportedly purchased from Fletcher's estate all shares of GFC stock. In a certification submitted in opposition to the motion, Adam stated Denise was the sole member of the LLC, which was the sole shareholder of GFC.

After hearing argument, the court entered a January 22, 2024 order, reinstating the case and denying the request to impose a constructive trust and find a violation of the TSL without a plenary hearing. In an accompanying statement of reasons, the court identified several factual disputes and credibility concerns reflected in the parties' submissions, including inconsistencies in Adam's representations. The court found:

> After the filing of a complaint to foreclose a tax sale certificate on a property, a third-party purchaser of that

property may not redeem the certificate without first complying with N.J.S.A. 54:5-89.1 and 54:5-98, which require timely intervention in the foreclosure action and the payment of fair market value for the property.

The court also found "if the proceeds were provided by a third [-]party purchaser, who had not moved to intervene in this action and demonstrated the payment of fair market value, the attempted redemption was invalid." The court determined it could not resolve based on the existing record whether the Jasinskis' conduct resulted from "mistakes or attempts to evade the requirements of the [TSL]." It also found it could not determine without an evidentiary hearing the terms of the agreement between GFC and the Jasinskis or the appropriate reimbursement required if it imposed a constructive trust. The court further declined to deny the Jasinskis, as the third-party purchasers, the opportunity to correct any premature redemption, citing Green Knight Capital, LLC v. Calderon, 252 N.J. 265 (2022).

On March 26, 2024, plaintiff moved for final judgment. In a supporting certification, plaintiff's counsel submitted an appraisal of the property prepared by Tony Kamand Realty LLC, which assumed "the property [wa]s in overall poor condition" and concluded "the market value of the subject property in the fee simple estate" was $195,000 as of December 15, 2023. As counsel pointed out, that amount was "nearly four times the amount the Jasinski[s]" had paid for

10

the property.  Defendants opposed the motion and cross-moved for an order permitting the Jasinskis and the LLC to intervene.  On the day of oral argument, they sought to supplement their opposition papers with an April 9, 2024 appraisal report from McCullough CPA MAI LLC, which valued the property at $37,000 as of April 11, 2022.

After hearing argument, the court entered a June 19, 2024 order granting the cross-motion, denying without prejudice the motion for final judgment, and scheduling the matter for a plenary proceeding because the parties disputed "whether redemption was properly made by the requisite deadline."  The court subsequently conducted a hearing during which plaintiff presented the testimony of Burns, Feldstein, Adam, the Maple Shade tax collector, and appraiser Anthony F. Kamand, Jr.; defendants presented the testimony of Denise, Husted, and appraiser Charles A. McCullough.  Adam testified both that he and Denise had loaned Fletcher $50,000 to redeem the contract and that they had provided the money pursuant to the sales contract.  He also asserted he had performed repairs on the property and that Fletcher had agreed to include the cost of those repairs as part of the purchase price.

Judge Paula T. Dow entered a February 28, 2025 order declaring the September 2022 redemption void, granting plaintiff a constructive trust on the

property pending its transfer, directing Feldstein to return to the Jasinskis the redemption funds they had paid through Fletcher, and requiring transfer of the property's title to plaintiff on the return of the redemption funds.

In an accompanying written opinion, Judge Dow made extensive credibility determinations. She found Burns, Taylor, and Feldstein credible and Kamand "highly credible." She concluded Adam's testimony was neither credible nor reliable, finding he had offered conflicting accounts, had been unclear about the transactions that formed the basis of the Jasinskis' claims, had appeared at times to deliver rehearsed testimony, and had not supported his testimony about the repairs with documentation. She "found that Adam did not perform . . . any of the alleged repairs." She similarly determined Denise's testimony was not credible, observing "[s]he ultimately conceded her contract with Fletcher made no mention of the cost of repairs being included in the purchase price." She concluded Husted lacked first-hand knowledge, could not answer some questions without coaching, and appeared to be reading some of the documents at issue for the first time when she was testifying. She also rejected McCullough's testimony, finding him not credible because of "his poor performance on the stand . . . and other discrepancies in his testimony."

12

The judge found N.J.S.A. 54:5-89.1 applied because, even though the Jasinskis signed the sales contract before the foreclosure case was filed, they had not closed on the sale, "paid GFC anything for the property at that time," or "recorded the purported transaction" but instead had "waited until September 26, 2022[,] to give Fletcher $50,000 in cash to [redeem] the tax sale certificate on their behalf." She nevertheless found defendants had "not forfeit[ed] their redemption right . . . by tendering redemption monies to the Maple Shade tax collector through Fletcher prior to receiving court approval to do so," citing Green Knight, 252 N.J. at 276. Consequently, the judge considered "whether defendants met the substantive, fair market value acquisition requirement of the statute."

The judge ultimately concluded the Jasinskis had given Fletcher only $50,000 and held "plaintiff [wa]s entitled to the property because defendants did not acquire it for fair market value as mandated by N.J.S.A. 54:5-89.1." She explained in detail why she had accepted Kamand's testimony the property had a fair market value of $195,000 and rejected McCullough's testimony. She determined "plaintiff [had] presented clear and convincing, and indeed overwhelming, evidence that defendants wrongfully received the . . . property by violating N.J.S.A. 54:5-89.1." The judge imposed a constructive trust to

13

prevent defendants from benefiting from their purported purchase of the property given their failure to comply with the requirements of N.J.S.A. 54:5-89.1 while enabling them to recover the money they had paid through Fletcher to redeem the tax sale certificate.

The court entered a final judgment on April 15, 2025, and an amended final judgment on April 17, 2025, both in plaintiff's favor.

On appeal, defendants argue the court abused its discretion in voiding the redemption, misapplied Green Knight, and ignored competent evidence about the consideration paid for the property. Citing Tyler v. Hennepin County, 598 U.S. 631 (2023), defendants also argue the court violated GFC's Fifth Amendment rights by permitting a taking without just compensation.

## II.

"Our review of the judge's findings of fact based on the testimony presented during . . . plenary hearings is limited." Mountain Hill, L.L.C. v. Twp. Comm. of Middletown, 403 N.J. Super. 146, 192 (App. Div. 2008); see also In re D.L.B., 468 N.J. Super. 397, 416 (App. Div. 2021) (same). A trial court's findings "are considered binding on appeal when supported by adequate, substantial and credible evidence." Horne v. Edwards, 477 N.J. Super. 302, 312 (App. Div. 2023) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65

N.J. 474, 484 (1974)).  Thus, "we do not disturb the factual findings and legal conclusions of the trial court . . . unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."  160 W. Broadway Assocs., LP v. 1 Mem'l Drive, LLC, 466 N.J. Super. 600, 610 (App. Div. 2021) (quoting Seidman v. Clifton Sav. Bank, SLA, 205 N.J. 150, 169 (2011)).

"That deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'"  C.R. v. M.T., 257 N.J. 126, 139 (2024) (quoting MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007)); see also Zaman v. Felton, 219 N.J. 199, 215-16 (2014) (finding deference "is especially the case when those findings 'are substantially influenced by [the judge's] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy'" (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964))).  A reviewing court is "not in a good position to judge credibility and, ordinarily, should not make new credibility findings."  Mountain Hill, 403 N.J. Super. at 193.

However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special

deference." Johnson v. Wilerson, 262 N.J. 75, 81 (2025) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). Thus, we review questions of law de novo. Englewood Hosp. & Med. Ctr. v. State, 261 N.J. 195, 211-12 (2025)

A trial court's order regarding intervention in a tax sale foreclosure is reviewed under an abuse-of-discretion standard. See Town of Phillipsburg v. Block 1508, 380 N.J. Super. 159, 173-74 (App. Div. 2005). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Palmer v. Flagship Resort Dev. Corp., 481 N.J. Super. 465, 496 (App. Div. 2025) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

The TSL "provides a framework for towns to collect a stream of revenue when property owners do not pay their taxes." 257-261 20th Ave., Realty, LLC v. Roberto, 259 N.J. 417, 432 (2025). Under the TSL, a municipality is permitted "to convert[ ] [a continuous] lien into a stream of revenue by encouraging the purchase of tax certificates on tax-dormant properties." Ibid. (first alteration in original) (quoting Simon v. Cronecker, 189 N.J. 304, 318 (2007)). The purchaser of the tax sale certificate "agrees to pay . . . the municipality the taxes or assessments due." Id. at 433 (omission in original)

(quoting Cronecker, 189 N.J. at 319). The purchaser may also "record the certificate . . . 'as a mortgage on the land.'" Ibid. (omission in original) (quoting Cronecker, 189 N.J. at 319).

However, the mere "[p]urchase of a tax sale certificate does not convey the property to the buyer," ibid, nor does it "divest the delinquent owner of his title to the land," Princeton Off. Park, LP v. Plymouth Park Tax Servs., LLC, 218 N.J. 52, 63 (2014) (quoting Township of Jefferson v. Block 447A, 228 N.J. Super. 1, 4 (App. Div. 1988)). In other words, "[t]he delinquent owner still has title to the property; the purchaser obtains the municipality's lien." Roberto, 259 N.J. at 433. Thus, "the purchaser acquires an 'inchoate interest . . . consist[ing] of three rights: the right to receive the sum paid for the certificate with interest'; 'the right to redeem' any later-issued tax sale certificate; and 'the right to acquire title by foreclos[ure].'" Ibid. (third alteration in original) (quoting Varsolona v. Breen Cap. Servs. Corp., 180 N.J. 605, 618 (2004)).

In contrast, a delinquent property owner may "redeem a tax certificate by paying the amount tendered at the sale, the buyer's expenses, and subsequent taxes with interest." Ibid. (citing N.J.S.A. 54:5-58 to -60). "[A]ll redemptions must 'be made through the tax collector's office.'" Ibid. (quoting N.J.S.A. 54:5-54.1). In the event the property owner fails to redeem the tax certificate, the

purchaser may seek "to foreclose the right of redemption." Ibid. (quoting N.J.S.A. 54:5-86(a)).

N.J.S.A. 54:5-89.1 outlines the circumstances under which a person who acquires and records an interest in property after the filing of a tax foreclosure complaint may intervene and redeem. N.J.S.A. 54:5-89.1 provides, in relevant part:

> No person . . . shall be admitted as a party to such action, nor shall the person have the right to redeem the lands from the tax sale whenever it shall appear that the person has acquired such interest in the lands for <u>less than fair market value</u> <u>after the filing of the complaint</u> . . . .
>
> [(Emphasis added).]

The TSL imposes both a "substantive requirement" and a "procedural requirement" for post-litigation redemption. Green Knight, 252 N.J. at 271-72. To redeem a tax sale certificate after acquiring an interest in the property subsequent to the filing of a foreclosure complaint, the party must: demonstrate the interest was obtained for not "less than fair market value," id. at 271 (quoting N.J.S.A. 54:5-89.1); and seek and obtain intervention in the foreclosure action, with redemption occurring "in that cause only," id. at 272 (quoting N.J.S.A.

54:5-98).[2]  See also N.J.S.A. 54:5-89.1 (mandating that only a person who has been "admitted as a party to [the] action" may seek redemption).

"[T]ax sale cases . . . present competing public policy considerations." Phoenix Pinelands Corp. v. Davidoff, 467 N.J. Super. 532, 598 (App. Div. 2021).  The Court has recognized that the TSL "is 'a remedial statute' and must 'be liberally construed to effectuate the remedial objects thereof.'"  Green Knight, 252 N.J. at 274 (quoting N.J.S.A. 54:5-3).  Within those remedies is the "[property] owner's right to rescue some part of its property interest in the face of an impending foreclosure by contracting with an investor."  Ibid.; see also Cronecker, 189 N.J. at 328 ("The purpose of N.J.S.A. 54:5-89.1 is not to bar third-party investors from helping property owners in desperate need of financial assistance . . . .").

We perceive no abuse of discretion or misapplication of the law resulting in Judge Dow's order granting plaintiff's motion or in her comprehensive written decision explaining that determination.  We have no basis to reject her detailed credibility findings.  Her determinations – including findings about the transaction proposed in the April 11, 2022 contract, the circumstances

---

[2]  In its July 10, 2024 amendment of N.J.S.A. 54:5-98, the Legislature retained in the statute the following language:  "After the complaint has been filed redemption shall be made in that cause only . . . ."

surrounding the purported redemption, the consideration the Jasinskis had given for the property, and their failure to pay the property's fair market value – were supported by substantial, credible evidence and based on a correct application of prevailing law.

Defendants argue the judge erred in applying the requirements of N.J.S.A. 54:5-89.1 to this case, contending the Jasinskis' contractual rights to the property vested before Christiana filed its complaint. They argue, alternatively, that GFC never sold the property and, thus, had the right to redeem the property on September 26, 2022. We disagree. The first argument is belied by the facts found by the judge: the Jasinskis did not close the transaction contemplated in the April 11, 2022 contract and did not record the contract or any deed based on it but instead, after the lawsuit commenced, entered into a September 23, 2022 agreement in which they would acquire ownership in return for funding the redemption. If the Jasinskis already had an interest in the property, they had no reason to enter into the September 23, 2022 agreement. Thus, they did not have "an interest" in the property before Christiana commenced the foreclosure action. N.J.S.A. 54:5-89.1. The second argument ignores the judge's well-supported factual finding that the Jasinskis had "give[n] Fletcher $50,000 in cash to purchase the tax sale certificate on their behalf." (Emphasis added). Thus, it

20

wasn't GFC that redeemed the tax sale certificate, but the Jasinskis who attempted to redeem the certificate before moving to intervene by giving their money to Fletcher, who was driven in a medical transport van to deliver it to the tax collector. On that record, the court appropriately applied the requirements of N.J.S.A. 54:5-89.1 to this case.[3]

Defendants fault the judge for not applying the "liberalized" standard of Green Knight, 252 N.J. 265. But Green Knight does not require a court to recognize a pre-litigation interest that did not exist. In Green Knight, the Court rejected the argument "that there may be no forgiveness for an investor's mistaken or premature attempt to redeem" and "conclude[d] that the [TSL] bears no hostility toward investors who otherwise meet the requirements of N.J.S.A. 54:5-89.1." Id. at 274-75. The judge applied that standard when she granted the cross-motion for intervention and considered whether defendants "otherwise" met those requirements. Id. at 275.

The judge ultimately determined that defendants did not meet the "fair market value" requirement of N.J.S.A. 54:5-89.1. Defendants fault the judge

---

[3] Defendants focus on the dismissal of the complaint for lack of prosecution and its subsequent reinstatement. But that procedural dismissal without prejudice and reinstatement do not alter the fact that the Jasinskis and the LLC acquired any interest they may have had in the property "after the filing of the complaint." N.J.S.A. 54:5-89.1.

for not considering evidence they claimed demonstrated the Jasinskis had paid "more than nominal consideration" for the property. Historically, N.J.S.A. 54:5-89.1 prohibited "a party from intervening in a tax foreclosure action when claiming a right in the property that was acquired 'for a nominal consideration.'" FWDSL & Assocs., LP v. Berezansky, 452 N.J. Super. 408, 412 (App. Div. 2017) (emphasis added) (quoting N.J.S.A. 54:5-89.1 (1967)).

In 2021, however, the Legislature amended N.J.S.A. 54:5-89.1, deleting the phrase "a nominal consideration" and replacing it with "for less than fair market value." L. 2021, c. 231, § 1 (effective Sep. 24, 2021). In effect, the statute "was amended to bar investors from redeeming when acquiring, after the filing of a foreclosure complaint, an interest 'for less than fair market value.'" Green Knight, 252 N.J. at 271 (emphasis added) (quoting L. 2021, c. 231, § 1). As the Supreme Court observed, this amendment reflects the Legislature's decision "to further enhance the opportunities of distressed property owners to save their investment once foreclosure is sought," while "interdicting a chief way in which distressed owners might be preyed upon by late-arriving investors." Ibid. The judge correctly applied the "fair market value" standard in considering the consideration paid for the property at issue in this 2022 foreclosure case. And the judge's determination defendants did not meet that

standard was supported by substantial credible evidence in the record, including appraiser Kamand's "highly credible" testimony.

Finally, we address defendants' argument based on Tyler, 598 U.S. 631, which defendants raise for the first time on appeal. The United States Supreme Court decided Tyler on May 25, 2023, before the court entered the February 28, 2025 order under appeal. The New Jersey Supreme Court decided Roberto, 259 N.J. 417, on January 9, 2025, also before entry of the February 28, 2025 order. "[A]n issue may not be raised on appeal if not raised in the proceedings below." N.J. Dep't of Env't Prot. v. Huber, 213 N.J. 338, 372 (2013).

On review of a trial court decision, "appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." Ricci v. Ricci, 448 N.J. Super. 546, 567 (App. Div. 2017) (quoting Zaman, 219 N.J. at 226-27); see also State v. Dangcil, 248 N.J. 114, 132 n.4 (2021) (finding "[g]enerally, an appellate court will not consider issues, even constitutional ones, which were not raised below" (quoting State v. Galicia, 210 N.J. 364, 383 (2012))). "Constitutional issues are not afterthoughts to be raised

for the first time on appeal . . . ." In re D.F.S., 446 N.J. Super. 203, 220 (App. Div. 2016). Accordingly, we decline to consider defendants' Tyler argument.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-2365-24